Gerard G. PENDAS, Jr., Plaintiff,

v.

Marvin T. RUNYON, Postmaster
General, Defendant.

No. 94–CV–984.

United States District Court,
N.D. New York.

July 11, 1996.

Office of Norman P. Deep, Clinton, NY, (Peter Angelini, of counsel), for plaintiff.

United States Postal Service, Law Department of Windsor Field, Windsor, CT (Anne M. Gallaudet, of counsel), for defendant.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Plaintiff Gerard G. Pendas, Jr. ("Pendas") brings this 29 U.S.C. § 621 claim under the Age Discrimination in Employment Act

(ADEA) stemming from alleged discrimination by his former employer, defendant Marvin T. Runyon ("Runyon"), Postmaster General, United States Postal Service. Pendas brings three claims. First, plaintiff asserts that the defendant violated the ADEA by denying him "regular" status when other younger employees with less experience were granted such status. Second, Pendas asserts that defendant regularly suggested that he retire, breached an agreement regarding early morning work hours, and required him to stand eight hours each day against his physician's orders, all in retaliation for filing a prior claim of age discrimination. Finally, Pendas alleges that he was constructively discharged when he could not stand for eight hours each day as required by the defendant. Plaintiff seeks compensatory damages including lost wages, future wages, benefits and interest, liquidated damages, and reasonable attorney's fees.

Presently before this court is the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56, and defendant's motion to strike the amended complaint. Oral argument was heard in this matter on May 13, 1996, in Utica, New York. During oral argument and within the written submissions to the court, plaintiff conceded that his requests for a jury trial, compensatory damages, liquidated damages, prejudgment interest, and attorney's fees are not available to federal employees suing the federal government under the ADEA. Pendas submits, however, that he is entitled to back pay and possibly front pay.

## I. *FACTS*

The following description of the facts of this case are taken from the submissions of both parties. When there are conflicts of fact, the court views the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff was born on December 12, 1930. Pendas worked for the United States Postal Service ("Postal Service") from September of 1980 to December 1, 1993. When Pendas began working at the Postal Service, he was a part-time flexible (PTF) special delivery messenger. Being a PTF employee in the Postal Service does not carry with it any guarantee of work during any specific time, but rather only guarantees a minimum number of hours in a given week only when the individual is called in to work. Pendas was represented by the American Postal Workers Union (APW).

In 1988, Pendas contacted an Equal Employment Opportunity (EEO) counselor and brought a claim against the defendant alleging that he was improperly being denied the ability to deliver express mail, that the position of special delivery messenger was being improperly eliminated, and that he should be given full-time status. That claim was settled. In 1990, plaintiff again complained to an EEO counselor making claims similar to the 1988 action, and also alleging that the defendant was violating a 1989 pre-arbitration settlement. On December 7, 1990, Pendas withdrew this complaint.

On December 29, 1990, plaintiff was converted from a PTF special delivery messenger to a PTF city letter carrier because the special delivery messenger classification was being eliminated. The plaintiff's union was opposed to this action, but did not succeed in preventing the positions from being eliminated. It is at this point in time, defendant argues, that the plaintiff's time to object to the elimination of the special delivery messenger accrued. Defendant contends that Pendas failed to file an EEO complaint within thirty days as required.

Shortly after being converted to a PTF city letter carrier, on January 6, 1991, plaintiff fell and injured himself. It is unclear whether Pendas ceased working during this time or if he was placed on limited work duty, or some combination of both. Plaintiff filed a grievance regarding sick leave hours granted by the Postal Service. Pendas claimed that he was entitled to more hours of sick pay than he was given.

In a letter addressed to the Postal Service dated February 1, 1991, Dr. Richard Boehler, the plaintiff's physician, stated that Pendas suffered from Osteoarthritis. Dr. Boehler recommended that Pendas' work day run from 8:00 a.m. to 6:00 p.m., that he should

not be required to stand for more than one hour at a time or sit for more than a few hours, that he should not lift more than 20 pounds, and that he should not be reaching or lifting above his shoulders. After Dr. Boehler took an administrative position, Pendas selected Dr. Richard Lavigne as his primary care physician. Although he did not perform a physical examination, Dr. Lavigne reached similar conclusions as Dr. Boehler about the plaintiff's ability to perform work. In a letter to the Postal Service, Dr. Lavigne recommended that Pendas work a daytime schedule, avoid standing or sitting for prolonged periods without being able to change position frequently, avoid working above shoulder height, avoid lifting more than 20 pounds, and avoid bending or stooping. In September 1991, plaintiff's injury compensation claim was denied. In October 1991, Pendas underwent bypass surgery and was not working from approximately October 1, 1991, to February 1992. Upon his return, Pendas was given light duty work.

On October 25, 1992, Pendas was notified that he was being assigned to the "carrier craft" consisting of a four hour day beginning at 4:00 a.m. Dr. Lavigne was contacted and asked whether or not he felt the plaintiff was capable of light duty work consisting of a four hour work day beginning at 4:00 a.m., and Dr. Lavigne stated that he believed that Pendas was able to work that shift. Plaintiff was slated to begin this new position on October 28, 1992, but he refused to comply citing his medical restrictions and physician recommendations. Plaintiff received a letter of warning for failing to follow instructions and failing to report to his assigned duties.

Around this time, Pendas obtained a new physician, Dr. Michael J. Gardner, who recommended that Pendas not work before 8:00 a.m. and made similar recommendations as the other physicians concerning reaching, limits on standing and sitting, working above shoulder height and lifting only 20 pounds or less. Because of the discrepancies in medical opinions, defendant had Pendas see the postal contract physician, Dr. William Rogers, who found that he was capable of performing light duty work beginning at 4:00 a.m. Plaintiff received a seven day suspension for

failing to report to work. Pendas then filed a grievance over the suspension and filed an informal complaint with an EEO counselor on December 7, 1992.

In January 1993, plaintiff reached an oral agreement with Reginald Poulin, the Postmaster at Albany, New York, to resolve the EEO complaint. Plaintiff was promised a light work assignment, and his records were purged of the disciplinary actions taken against him. In addition, plaintiff received the extra sick pay to which he felt he was entitled stemming from his absence following his bypass surgery. Further, plaintiff was promised a job which would enable him to deliver express mail and to travel to local schools and set up post boxes for children. According to the plaintiff, he never received these positions and was placed in the Central Forwarding Unit, a position he contends was detrimental to his health because he had to sit for extended periods of time. As a result of what the plaintiff felt was a violation of the oral agreement, Pendas filed a formal EEO complaint on March 12, 1993.

On August 7, 1993, Pendas was converted from PTF to a full-time city carrier with regular hours. Plaintiff contends that upon receiving full-time status, he was forced to work in a job that required him to stand for eight hours each day, which again, he finds detrimental to his health and physically impossible. Pendas notes that other less experienced and less qualified employees were given jobs which enabled them to walk, drive, and deliver mail, a combination of duties which he submits is the type of physical activity which his physician's recommended. Furthermore, the new position required him to begin work at 4:30 a.m. Once again, Pendas refused to report to work at 4:30 a.m. and received another letter of warning. Pendas alleges that he was forced to leave the position on December 1, 1993, because he was incapable of performing the work which he was given.

In sum, the first cause of action stems from the allegation that Pendas was not given the position to which he felt he was entitled, and which was filled by younger, less experienced personnel. The second cause of action alleging retaliation stems from the

facts surrounding his placement on an early morning work shift which required him to stand and the allegations that he was asked on six separate occasions when he, and only he, was going to retire. Finally, the constructive discharge claim stems from the allegation that he was required to stand for an eight hour shift which began at 4:30 a.m., both of which are contrary to his physician's orders. On May 6, 1994, an EEOC Administrative Judge dismissed the March 12, 1993, formal complaint as moot since Pendas had retired from the Postal Service and had lost no wages because of the alleged discrimination.

## II. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509–10 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983), and pleadings of a pro se litigant must be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Nance v. Kelly*, 912 F.2d 605 (2d Cir.1990).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1355–56. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356.

Moreover, material facts set forth in the movant's statement required by the local rules are deemed admitted unless controverted in the nonmovant's statement in opposition. L.R. 10(j) (current version L.R. 7.1(f)). Thus, no genuine issue exists as to facts set forth in a movant's 10(j) Statement if the nonmovant fails to put such facts into controversy by a response in opposition to the summary judgment motion. *See id.*

### B. The Age Discrimination in Employment Act

 The ADEA makes it unlawful for an employer to discharge an employee because of his age. 29 U.S.C. § 623(a)(1) (1988). "An employer may not dismiss employees for unlawful discriminatory reasons." *Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir.1992). An employer may, however, discharge an employee based on reasonable factors other than age. *Cf. Hazen Paper Company v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); 29 U.S.C. § 623(f)(1) (1988). The familiar principles set forth with regard to Title VII claims are also applicable to an analysis of an ADEA claim. *Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *Russo v. Trifari, Krussman & Fishel, Inc.*, 837 F.2d 40, 43 (2d Cir.1988) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir.1983)). That is, the plaintiff may establish a prima facie case of age discrimination either by indirect evidence showing: "(1) that he was within the protected age group; (2) that he was qualified for the job; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination;" *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 359 (2d Cir.1993); *Russo,*

837 F.2d at 43; *Pena,* 702 F.2d at 324; or by direct evidence.

Establishment of a prima facie case by indirect evidence, however, merely raises an inference of discrimination, and "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Once the plaintiff has proven a prima facie case of discrimination, the burden of production then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason." *Id.* Once the defendant offers this type of evidence, the *McDonnell* [1]*/Burdine* presumption drops from the case. *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). The plaintiff must then persuade the Court that the defendant's proffered reason was merely a "pretext" and that he was the victim of intentional discrimination. *Saint Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993) (The plaintiff retains the ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination). Therefore, under the *McDonnell/Burdine* framework, the court must not only decide whether the proffered reason for the adverse employment decision is a pretext for discrimination, *Price Waterhouse v. Hopkins,* 490 U.S. 228, 247, 109 S.Ct. 1775, 1788–89, 104 L.Ed.2d 268 (1989), but must be convinced that there exists no other reasons suggested in the record that may justify the defendant's actions and that the plaintiff was the victim of intentional discrimination. *Saint Mary's,* 509 U.S. at 521–24, 113 S.Ct. at 2755–56.[2]

Since the premise of the *McDonnell/Burdine* pretext analysis is "that *either* a legitimate *or* illegitimate set of considerations led to the challenged decision," *Price Waterhouse,* 490 U.S. at 247, 109 S.Ct. at 1788, that framework is inappropriate in cases where there is direct evidence that a discriminatory criterion played a part in the employment decision. *Id.* at 246–47, 109 S.Ct. at 1788–89; *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985); *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir.1989). In such a "mixed motives" case, the inquiry is whether the discriminatory criterion was a substantial or motivating factor in the decision making process, such that if it had been absent, a different decision would have been made. *Price Waterhouse,* 490 U.S. at 250, 109 S.Ct. at 1790–91; *Grant,* 880 F.2d at 1568; *Berl v. County of Westchester,* 849 F.2d 712, 714–15 (2d Cir.1988); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–86, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) (dual motivation/same decision test). In order to avoid liability then, the burden of proof shifts to the employer to prove by a preponderance of the evidence that plaintiff would have been discharged even if it had not considered the discriminatory criterion. *Price Waterhouse,* 490 U.S. at 242, 109 S.Ct. at 1786; *Grant,* 880 F.2d at 1568.[3] Admit-

---

**1.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**2.** Before *Saint Mary's,* a plaintiff could succeed in proving intentional discrimination solely by disproving the truth of defendant's proffered reasons. *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482; *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Lopez v. Metropolitan Life Ins. Co.* 930 F.2d 157, 161 (2d Cir.1991), *cert. denied,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991). However, *Saint Mary's* has worked a significant change in the law.

The fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*Saint Mary's,* 509 U.S. at 510–11, 113 S.Ct. at 2749. As a result, rejection of the defendant's proffered reasons does not *compel* a finding of intentional discrimination, and although the plaintiff need not bring forth any additional proof of discrimination to succeed, the court must still be convinced that the plaintiff was the victim of intentional discrimination. *Id.*

**3.** In other words, "once the employee proves that the illegitimate reason played a part in the employer's motivation, the employer loses unless

tedly, this analytical framework places a heavier burden on the defendant than *Burdine;* but it is reserved for those cases in which there is direct evidence of discrimination in the employment decision.

■ Accordingly, in a disparate treatment case the fact-finder must first determine whether to apply a "pretext" or a "mixed motive" analysis. *Price Waterhouse*, 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12; *Barbano v. Madison County*, 922 F.2d 139, 142 (2d Cir.1990). If the plaintiff has demonstrated through direct evidence that a discriminatory criterion played a substantial or motivating part in the challenged employment decision, then the "mixed motive" analysis of *Price Waterhouse* applies. Consequently, the burden shifts to the employer to prove by a preponderance of the evidence that "its legitimate reason, standing alone, would have induced it to make the same decision" at the time the decision was made. *Price Waterhouse*, 490 U.S. at 252, 109 S.Ct. at 1791–92; *Barbano*, 922 F.2d at 145. In cases where there is direct evidence of discrimination, then, the fact-finder need not ever reach the question of "pretext". *Grant*, 880 F.2d at 1568. Alternatively, if the plaintiff cannot offer direct evidence of discrimination, the court must give him the opportunity to prove intentional discrimination through indirect evidence under the *McDonnell/Burdine* "pretext" analysis. *Price Waterhouse*, 490 U.S. at 247 n. 12, at 278, 109 S.Ct. at 1789 n. 12, at 1805 (O'Connor, J., concurring). In other words, if the plaintiff meets the initial burden of the "mixed motive" analysis by presenting direct evidence of discrimination, then the fact-finder need not engage in a "pretext" analysis. Therefore, the "key inquiry" at this point is whether there is direct evidence that "impermissible criterion played some part in the decision-making process." *Barbano*, 922 F.2d at 145.

Making the distinction between direct and indirect evidence of a discriminatory motive is often difficult. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180–86 (2d Cir. 1992). Presenting direct evidence of discriminatory animus in order to satisfy *Price Waterhouse* does not mean evidence which, in and of itself, shows a discriminatory animus without resort to inference. It is a general rule of civil litigation that a fact may be proved by direct evidence, i.e., noncircumstantial, and indirect or circumstantial evidence.[4] *Id.* Therefore, "direct evidence" as used by the *Price Waterhouse* court[5] means "enough evidence that, if believed, could reasonably allow [the trier of fact] to conclude that the adverse employment consequences were 'because of' an impermissible factor." Id. at 1187. Therefore, purely statistical evidence or plaintiff's qualifications for, and the availability of, a given position would not suffice to satisfy *Price Waterhouse*. *Ostrowski*, 968 F.2d at 182. Direct evidence does, however, comprise not only specific remarks of persons involved in the decision-making process that reflect a discriminatory animus, but also actions, statements, and documents for which a trier of fact may infer an impermissible bias. *Id.; Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991).

### C. *Time Limitation*

When individuals feel as though they have been discriminated against because of their age, the ADEA provides two options. First, a claimant can opt to file a complaint with the EEOC within 45 days of the allegedly discriminatory act, and if needed, file an action in federal court at a later date. 29 C.F.R. § 1614.105 (1995). In the alternative, a claimant can choose to bring an action in

---

the employer can persuade the fact-finder that the adverse action would have been taken even in the absence of the illegitimate reason." *Davis v. State University of New York*, 802 F.2d 638, 644 (2d Cir.1986) (Newman, C.J., concurring).

**4.** Any circumstantial evidence presented must still be directly tied to the alleged discriminatory animus. *Ostrowski v. Atlantic Mutual Ins. Co.*, 968 F.2d 171, 182 (2d Cir.1992).

**5.** The direct/indirect distinction was not adopted by the plurality of the court in *Price Waterhouse*, but rather was discussed in Justice O'Connor's concurring opinion. In *Tyler*, the Second Circuit determined that the Supreme Court had held that in a mixed motive case, a plaintiff must show that an illegitimate factor played a substantial or motivating part in the employment decision. 958 F.2d at 1183.

federal court after giving the Equal Employment Opportunity Commission (EEOC) 30 days notice of intent to sue in federal court. 29 C.F.R. § 1614.201 (1995).

Runyon asserts that all of the plaintiff's claims that take place before and after the period between October 22, 1992, and December 7, 1992, should be dismissed. Defendant argues that December 7, 1992, is the date that the plaintiff filed an informal complaint with an EEO counselor, and therefore, only events that happened within 45 days prior to this filing, or October 22, 1992, would be covered. Thus, according to Runyon, only two claims would survive: the claim that the defendant impermissibly required the plaintiff to report to work at 4:00 a.m. and the related claim of improper discipline for failing to report to work at 4:00 a.m. The other claims involving refusal to place Pendas on regular status, repeated suggestions of retirement, and constructive discharge are all either time barred or have been resolved through prior negotiations. In response, plaintiff contends that the 45 day limitation merely requires the claimant to initiate contact with a counselor within 45 days of the date of the alleged discriminatory act, and does not prohibit raising related complaints about further discriminatory actions that occur after the complaint has been filed. Plaintiff asserts that the constructive discharge and retaliation claims are related to the other claims raised to the EEOC, and are therefore not barred. For the reasons discussed later in this opinion, the court finds that the plaintiff's claims are not time barred.

■■■ As noted earlier, an essential element of establishing a claim under the ADEA is to show that the claimant was in fact discharged. *Stetson*, 995 F.2d at 359. A "discharge," in satisfaction of the third element of the prima facie case, may be either an actual termination of the plaintiff's employment by the employer or a "constructive" discharge. *Pena*, 702 F.2d at 325. A claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were " 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Pena*, 702 F.2d at 325 (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)).

Thus, the first step in analyzing this motion for summary judgment revolves around the concept of constructive discharge. In order to survive the defendant's motion for summary judgment, the plaintiff must show two things. First, plaintiff must show that the defendants had reasonable notice of a constructive discharge claim. If the defendants did not have notice, summary judgment should be granted. Second, plaintiff must show that a reasonable jury could find that he was, in fact, constructively discharged.

### 1. *Notification of Constructive Discharge*

■■■ In the March 12, 1993, formal complaint to the EEOC, Pendas alleged that "he was discriminated against because of his age (62) and physical handicap (Osteoarthritis) in that his supervisor has required him to report to duty at 0400 since October 28, 1992 which is in direct conflict with his physician's medical restrictions." Plaintiff asserts that although he did not inform anyone, including the EEOC as required by the ADEA, that he was being constructively discharged when he stopped working on December 1, 1993, the defendant nevertheless had notice that a constructive discharge claim could have resulted in his case because it is related to the original claim he filed with the EEOC.

In support of this argument, plaintiff cites *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569 (9th Cir.1973). In *Oubichon*, a claimant alleging racial discrimination was permitted to seek relief for incidents not listed in the original complaint or filed in supplemental complaints because the court saw them as being reasonably related to the charges raised in the original complaint. "To force an employee to return to the state agency every time he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier." *Id.* at

571. *See also Weise v. Syracuse University,* 522 F.2d 397, 412 (2d Cir.1975) (adopting the holding in *Oubichon).* It is plaintiff's contention that his claim which alleged that the defendant was impermissibly requiring him to work an early morning shift contrary to his physician's orders is reasonably related to his constructive discharge claim.

Plaintiff resigned from his job with the Postal Service on December 1, 1993. Pendas complains specifically of discrimination stemming from the requirement that he report to work at 4:30 a.m. which he claims disrupted his schedule and was contrary to his physician's orders. However, the third cause of action in the case before this court specifically states that Pendas was constructively discharged because he was forced to stand for eight hours each day. Although this seems to be in conflict, the court finds that the requirement to stand and the requirement to report to work at 4:30 a.m. are inextricably linked since they both relate to the job to which Pendas was assigned, and as discussed earlier, are both contrary to his physician's orders.

Therefore, for purposes of this motion for summary judgment, the court finds that the plaintiff's complaint to the EEOC alleging the impermissible requirement of working an early morning shift is reasonably related to the claim before this court of constructive discharge due to the impermissible requirement of having Pendas stand for eight hour shifts. The defendant was aware that Pendas was claiming that his medical condition prohibited him from working early morning hours and prohibited him from standing for periods of more than one hour at a time. Despite the fact that Dr. Lavigne and Dr. Rogers opined that he was capable of working early morning hours, Dr. Lavigne acknowledged that he was of the opinion that he should not stand for more than one hour or so at a time. Perhaps more important is the fact that Dr. Lavigne approved of the early morning work shift based upon the presumption that Pendas was to be working only four hours at a time. Pendas contends, and it is uncontroverted, that he was working eight hour shifts while standing. Furthermore, both Dr. Gardner and Dr. Boehler were of the opinion that plaintiff should not be working early morning hours and could not stand for more than one hour at a time. Therefore, the constructive discharge claim is reasonably related to the complaint filed by Pendas, and must be considered a continuation of the allegations surrounding that complaint. As a result, the court is satisfied that the defendant was on notice that a constructive discharge claim was probable, and that investigation into the matter should have taken place.

### 2. *Constructive Discharge Requirement*

To reiterate, "a claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Pena,* 702 F.2d at 325 (quoting *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977)). Plaintiff argues that his placement on an early morning work shift which required him to stand for eight hours at a time was contrary to his physician's orders and constituted an unreasonably difficult work condition which was deliberately created, thus meeting the standard for constructive discharge.

The law of constructive discharge suggests that mere cuts in pay or reduction in responsibility do not rise to the level of constructive discharge. *Stetson,* 995 F.2d at 360 (citing *Pena,* 702 F.2d at 325–26). What a claimant may consider to be unfair criticism of his or her work will also not rise to the level of constructive discharge. *Id.* (citing *Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1160–61 (3d Cir.1993)). "Nor is the standard for constructive discharge merely whether the employee's working conditions were difficult or unpleasant." *Id.* (citing *Martin v. Citibank, N.A.,* 762 F.2d 212 (2d Cir.1985)). *Martin* involved an African-American employee who alleged constructive discharge after her supervisor announced to coworkers that Martin had been polygraphed regarding missing money among other inci-

dents that she claimed interfered with her ability to work. 762 F.2d at 221.

Clearly, the burden of a plaintiff to show constructive discharge is not light. Nevertheless, for purposes of summary judgment, this court cannot reach the conclusion that the plaintiff was not constructively discharged. Pendas was placed on a 4:30 a.m. work shift and made to stand for eight hours at a time, contrary to his physician's orders. Dr. Lavigne, Dr. Boehler, and Dr. Gardner all agree that working an early shift and standing for long periods of time are deleterious to the plaintiff's health. There is no doubt that the defendant knew that these physicians held these opinions. Dr. Richard Boehler sent a letter outlining his opinion on February 1, 1991, and as discussed earlier, Dr. Lavigne made the same recommendation in letter form on February 2, 1992. Dr. Lavigne did not alter this recommendation until he was contacted by the defendant by telephone, and as noted earlier, his change of opinion was based upon the erroneous presumption that plaintiff's shift was only four hours long. Finally, Dr. Gardner, the plaintiff's current treating source, also espouses the view that the plaintiff cannot work early morning hours and should not be standing for more than one hour at a time.

Thus, viewing the facts in a light most favorable to the plaintiff, this court cannot find as a matter of law that constructive discharge does not exist in this case. A reasonable fact-finder could conclude that because the plaintiff's physicians ordered him both not to work early morning hours, and not to stand for prolonged periods of time, the conditions created by the defendant were " 'so difficult ... that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Pena*, 702 F.2d at 325 (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)).

### 3. Retaliation and Discrimination Claims

██ Defendant asserts that the plaintiff's retaliation and discrimination claims should also be denied. Runyon argues that the retaliation claim should be denied as time barred since plaintiff did not allege retaliation or discrimination in his original complaint to the EEOC. The court finds this argument to be without merit. First, in a letter to the EEO coordinator dated December 3, 1992, plaintiff specifically states that "Mr. Loehner has retaliated by requiring me to report to work at 4:00 a.m. in direct violation of the restrictions requested by my Doctor." Second, in the formal complaint filed on March 12, 1993, plaintiff makes specific reference to retaliation for past EEOC activities. The court is therefore satisfied that the defendant had notice of plaintiff's retaliation claim and that it is not time barred.

Defendant concedes that plaintiff can make the requisite evidentiary showing concerning his claims of age discrimination surrounding his placement on an early morning shift. However, defendant argues that Pendas cannot controvert the defendant's legitimate, non-discriminatory reasons for the actions of the Postal Service. Defendant's legitimate reason for filing a disciplinary report against the plaintiff consists of the argument that plaintiff chose not to report to work at 4:30 a.m. The court finds this argument unconvincing. As discussed earlier, the reason that the plaintiff failed to report to work for the early morning shift was because it was contrary to his physician's orders to work those hours. Furthermore, Pendas was forced to stand for eight hours during these shifts which was also contrary to his physician's orders. Thus, because the defendant's proffered reason for the plaintiff's actions is an open factual question, this court cannot conclude that there is "evidence ... as to which there is no genuine issue and which no rational trier of fact could reject." *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir.1995) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203) (2d Cir.1995).

In conclusion, the court is satisfied that the plaintiff has established a prima facie case for age discrimination to survive this motion for summary judgment.

Accordingly, it is

ORDERED that

1. Defendant's motion for summary judgment is DENIED; and

2. Defendant's motion to strike the amended complaint is GRANTED with respect to requests for compensatory damages, liquidated damages, a jury trial, prejudgment interest, and attorney's fees.