**Gerard G. PENDAS, Jr., Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, Defendant.**

**No. 94–CV–984.**

United States District Court, N.D. New York.

Sept. 29, 1997.

Norman P. Deep, Clinton, NY, for Plaintiff.

Thomas J. Maroney, U.S. Atty., Northern District of New York, Syracuse, NY (Anne M. Gallaudet, Special Asst. U.S. Atty., Windsor, CT, of counsel), for Defendant.

## MEMORANDUM-DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Gerard G. Pendas, Jr. ("Pendas" or "plaintiff"), filed a complaint on August 5, 1994, alleging that the defendant, Marvin T. Runyon, Postmaster General ("post office" or "defendant"), discriminated and retaliated against him in violation of the Age Discrimination Employment Act ("ADEA") pursuant to 29 U.S.C. § 261. Plaintiff also alleges that he was construc-

tively discharged from his employment with the United States Postal Service. The defendant in an answer denied all of the material allegations in the complaint.

On April 15, 1996, the defendant filed a motion for summary judgment. Consequently, the claims for compensatory damages, liquidated damages, a jury trial, prejudgment interest, and attorney's fees were stricken from plaintiff's amended complaint. Otherwise, the motion was denied. At trial, issues of fact remained regarding the plaintiff's claims for back and front pay. *Pendas v. Runyon*, 933 F.Supp. 187 (N.D.N.Y.1996). Familiarity with the prior decision is assumed.

## II. *TRIAL*

A bench trial was conducted in 1997 on March 3, 4, and 5, in Albany, New York. The plaintiff testified in his own behalf, together with a co-employee, Richard P. White, and his current attending physician, Dr. Michael J. Gardner ("Dr.Gardner"). The witnesses for the defendant included postal employees Reginald J. Poulin, Anna Schubert, Robin Shaw, Margaret M. Lynch, Robert E. Matarese, Thomas P. Cunningham, John R. Reilly, Martha MacDonald, and Dennis J. Loehner. The defense also called the plaintiff's original attending physician, Dr. Richard E. Lavigne ("Dr.Lavigne"), and their examining physician, Dr. William Rogers ("Dr.Rogers"). Voluminous exhibits were also received into evidence.

Stipulation of records and facts and an Addendum were filed on March 7, 1997. Supplemental proposed findings of facts and conclusions of law were filed on May 9, 1997. Based upon the stipulations, all of the evidence, and the credibility of the witnesses, the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## III. *FINDINGS OF FACT*

The following facts are those pertinent to the issues raised in the pleadings. Additional facts are set forth in the prior decision. *Id.* at 189–91.

Born on June 12, 1930, the plaintiff was hired in September of 1980 by the United States Postal Service as a special delivery messenger for the postal district of Albany, New York. As a part-time flexible employee, the plaintiff worked flexible hours and was obviously not considered a regular full-time employee. In fact, pursuant to the applicable bargaining agreement, part-time flexible employees were not guaranteed any hours of work in a given week.

In 1988, plaintiff initiated contact with an EEOC counselor/investigator alleging age discrimination. However, his informal complaint was settled. In 1990, plaintiff again contacted an EEOC counselor/investigator. Nevertheless, on December 7, 1990, the plaintiff withdrew his informal complaint.

On December 29, 1990, plaintiff was converted from a special delivery messenger to a city letter carrier. This was still a part-time flexible position.

From approximately October 1, 1991, to February of 1992, the plaintiff was out of work as a result of heart by-pass surgery. Upon his return, he was placed in a temporary light duty position by supervisor Peg Lynch. Thereafter, on numerous occasions during the summer of 1992, Ms. Lynch inquired of Pendas whether or not he was going to retire.

Plaintiff's original physician with regard to his physical condition and limitations, provided medical reports to the post office on February 20, 1992, and May 22, 1992, which restricted Pendas to day time work, or work between 8:00 a.m. to 6:00 p.m. (Pl.'s Ex. 11 and 12). However, on August 24, 1992, plaintiff submitted a report pursuant to a form provided by the post office failing to indicate Dr. Lavigne's day time restriction. It was later indicated that this was an oversight on the doctor's part because the form contained no place for such information. (Pl.'s Ex. 13).

On October 25, 1992, area manager of stations Dennis Loehner, accompanied by Martha McDonald, Pendas' supervisor at that time, ordered that he start work at 4:00 a.m. and continue for four hours beginning on October 28, 1992. The following day, Ms. Lynch telephoned plaintiff's physician to see if the plaintiff could work at that early morning hour without any harm to his health. Caught off guard, Dr. Lavigne, without re-

viewing his records, stated that Pendas could work starting at 4:00 a.m. Regardless, the plaintiff refused to report to work at 4:00 a.m. In fact, he subsequently changed doctors, and on November 11, 1992, Pendas was examined by Dr. Gardner. Dr. Gardner filed a report with the post office in which he opined that it would be detrimental to the plaintiff's health to report to work at 4:00 a.m. and that he "should be given working daytime hours," preferably between 8:00 a.m. and 6:00 p.m. (Pl.'s Ex. 17).

On December 8, 1992, the plaintiff was examined by Dr. Rogers on behalf of the defendant. Dr. Rogers concluded that the plaintiff was medically fit to report to work at 4:00 a.m.

On December 9, 1992, the plaintiff filed an informal complaint with the EEOC in which he stated as follows:

> *Age* and *disability* Dennis Loener [sic] has violated the letter from my medical doctor, and has through Peg Lynch suggested I retire because of my age.
>
> Changed daylight normal working hours to 4 AM to 8 AM 4 hours a day. Has not allowed me to drive or be treated as other letter carriers on light duty.

(Pl.'s Ex. 21).

Sometime in December 1992 or January 1993, Pendas met with Reginald Poulin, the new Postmaster in Albany to resolve various complaints. An oral agreement was reached where Postmaster Poulin was required to do certain things following plaintiff's agreement to withdraw the informal EEOC complaint.

Thereafter, feeling that Postmaster Poulin had not lived up to the oral agreement, Pendas filed a formal complaint with the EEOC on March 12, 1993, in which he stated:

> On 27 Oct. Mr. Loehner directed me to report the following day at 0400 AM knowing full well that two (2) medical doctors had requested that this not be done. Ms. Peg Lynch has constantly prodded me for my retirement date. 'When you gonna retire?' Both incidents are in violation of my rights as to age and handicap.

(Pl.'s Ex. 23). He also attached a two page letter dated December 3, 1992, again alleging two claims of age discrimination, to wit, ordering him to report to work at 4:00 a.m.,

and Ms. Lynch inquiring of him when was he was going to retire. *Id.*

The plaintiff continued to work during the spring and summer of 1993. He was not thereafter required to, nor did he ever, work a 4:00 a.m. shift. On August 5, 1993, he was promoted to a full-time regular employee. Shortly thereafter, Mr. White, the younger man to whom Pendas has compared himself as being discriminated against, was also promoted to a regular full-time employee.

As a result of his promotion to a full-time regular employee, Pendas was again assigned to an early morning shift, this time commencing at 4:30 a.m. It was to begin on August 9, 1993. This shift was for eight hours. (Pl.'s Ex. 24). Plaintiff again refused to report to work at such an early hour because of the medical restrictions set forth by Dr. Gardner. On September 28, 1993, Pendas was again examined by Dr. Rogers. Dr. Rogers concluded that the plaintiff could not stand for eight hours on a shift unless he could move, sit, or change positions periodically. Dr. Rogers also reported that the time of reporting to work, to wit, 4:30 a.m., was not relevant to his health. (Def.'s Ex. 33). However, rather than reassign him to the 4:30 shift, he was allowed to remain on his assigned shift. *Id.*

During the last two months of his employment, Pendas started work at 7:30 a.m. Although assigned to work an eight hour day, he was not required to stand throughout that period of time, but was instead allowed to sit or stand as need be. He never made any complaints to his superiors about a need to stretch, stand, or sit. In fact, the last month he only worked seven eight hour days. Finally, the plaintiff retired from the post office on December 1, 1993.

On April 28, 1994, plaintiff wrote to the EEOC Administrative Law Judge assigned to hear his claims and advised him that he had delayed his retirement for one year "in hopes of receiving justice." (Pl.'s Ex. 27).

## IV. *CONCLUSIONS OF LAW*

### A. *Introduction*

The standards and shifting burdens under an Age Discrimination and Employment Act

case have been set forth in detail in this court's prior decision, and need not be set forth in full herein. *Pendas*, 933 F.Supp. at 191–94.

In his post trial proposed findings of fact and conclusions of law, the plaintiff has set forth his claims as follows:

> Plaintiff alleges that the defendant violated ADEA in three ways—that defendant denied plaintiff regular status when other younger employees with less experience were granted said status, that defendant regularly suggested that plaintiff retire, breached the 1992 agreement regarding early morning working hours, required plaintiff to stand for eight hours at a mail case every day against his physician's orders, all in retaliation for his prior EEOC claims of age discrimination, and finally, the plaintiff was constructively discharged when he could not stand for eight hours per day as required by defendant.

The defendant paraphrases the claims in a slightly different fashion, as follows:

> First, plaintiff alleges that defendant violated ADEA in denying the plaintiff 'regular' status when he was a special delivery messenger and letter carrier '. while employees younger and with much less service than he were given such status.' The plaintiff alleges that defendant regularly suggested that plaintiff retire, breached an agreement not to require plaintiff to work early morning hours, and made him stand eight hours a day against doctor's orders in retaliation for plaintiff having filed a prior claim of age discrimination. Finally, plaintiff alleges that he was constructively discharged in violation of the ADEA when as a result of defendant finally giving plaintiff regular status (fixed hours), defendant made him stand for an eight hour work day against doctor's orders.

The complaint and the respective allegations set forth two claims of age discrimination in violation of the ADEA; two claims of retaliation for filing a complaint with the EEOC in March of 1993; and finally, a claim for constructive discharge. Each claim will be discussed in turn.

**B. Discrimination—Denied regular full-time status as opposed to younger employees.**

■ This claim may be disposed of rather quickly. Throughout this litigation, the plaintiff compared himself to Rick White, a younger fellow employee whose career runs parallel to that of the plaintiff. While Mr. White did receive more hours as a part-time employee than did the plaintiff, Mr. White was never placed on light duty, and there is no indication that he ever had any physical restrictions in performing his job.

However, that is not the claim that the plaintiff is making in this case. The claim in this case is that Pendas was denied regular full-time status as opposed to younger employees. Mr. White is set forth as the only example of such a "younger" employee. In fact, the plaintiff was granted regular full-time status in August 1993, *before,* or on the same day as Mr. White. Therefore, in this regard there is no basis for the claim that the plaintiff was discriminated against because of his age.

**C. Discrimination—Suggestions that plaintiff retire.**

■ Ms. Lynch and others who supervised the plaintiff did, in fact, inquire on a number of occasions whether the plaintiff was about to retire. This does not establish an ADEA claim. The plaintiff has failed to prove that this activity on the part of Ms. Lynch, and perhaps others, constituted an adverse employment action. Without an adverse employment action, there can be no violation of ADEA. See *Scaria v. Rubin,* 117 F.3d 652, 653 (2d Cir.1997)(citing *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir. 1997)); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 534 (N.D.N.Y.1995), *aff'd,* 108 F.3d 462 (2d Cir.1997); *Cohen v. S.U.P.A. Inc.,* 814 F.Supp. 251, 260 (N.D.N.Y.1993). An adverse employment action must affect "the terms, privileges, duration, or conditions of plaintiff's employment." *Pazamickas v. New York State Office of Mental Retardation and Development Disabilities,* 963 F.Supp. 190, 195 (N.D.N.Y. 1997) (citing *Dortz v. City of New York,* 904 F.Supp. 127, 155 (S.D.N.Y.1995)). Ms.

Lynch's inquiries concerning the plaintiff's retirement had no adverse affect upon him. He did not retire because of those comments, nor did he receive any discipline or other adverse employment action because he refused to retire. In fact, he was promoted from part-time to full-time following the retirement "prodding" by Ms. Lynch. Rather than adverse, this is the very favorable employment action that Pendas desired.

Therefore, Pendas has failed to establish an essential element of his ADEA claim. The mere fact that he was questioned about his retirement plans on a number of occasions, without more, is not a violation of the ADEA, and is not actionable. Further, the issue of retirement is not necessarily related to age. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993) ("[A]ge and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"). Plaintiff failed to present any evidence that Ms. Lynch's comments were based upon his age.

### D. Retaliation—Report to work at 4:30 a.m. on August 9, 1993.

■ The plaintiff was only required to report to work at 4:30 a.m. after he was made a full-time regular employee. The defendant has set forth legitimate reasons for such an assignment. All regular employees are required to work an eight hour day, and Pendas knew this when he accepted the full-time position. In addition, he was needed on a shift that was also compatible with a light duty position consistent with his physical limitations. Therefore, plaintiff has failed to show that this assignment was a pretext for discrimination by reason of his age or in retaliation.

■ Even so, the plaintiff immediately went on vacation and never actually reported to work at 4:30 a.m. Even after he was examined by Dr. Rogers when it was reported that the time of work did not affect his health, his superiors did not reassign him to the 4:30 a.m. shift. (*See* Pl.'s Ex. 33). Thus, he remained assigned to a shift starting at 7:30 a.m. Consequently, there is no merit to plaintiff's claim that the 4:30 a.m. assignment was in retaliation.

### E. Retaliation—Required to stand eight hours against doctor's orders.

■ Again, the plaintiff has failed to demonstrate that he was required to stand for eight hours against doctor's orders. The defendant's doctor reported that Pendas needed to move about and change positions by either sitting or standing. He further testified that the plaintiff could not stand for an eight hour shift unless he could move, sit, or change positions periodically. Plaintiff was never *required* to stand for eight hours at any time throughout his career at the post office. Even *during* the last month of his employment, he indicated that he was never told by his superiors that he could not take a break to sit or stand as need be. He also stated that he never complained during that period of time. Thus, if he stood for eight hours, it was his own choice. Again, the plaintiff has failed to establish any factual basis to support his claim of retaliation according to the legal standards set forth in this court's prior decision.

### F. Constructive discharge.

■ Because the plaintiff has failed to prove that he was forced to work outside his medical limitations; failed to prove that he was either discriminated against or retaliated against because of his age or because of filing EEOC complaints; has failed to prove that his working conditions (especially his last months) were so difficult or unpleasant that a reasonable person in his position would have been forced to resign, he did not establish a constructive discharge. *See Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983).

## V. CONCLUSION

At trial, the plaintiff failed to establish a case of discrimination, retaliation, or constructive discharge. His disputes with his supervisors were personal, and arose in part, because of differences in opinion about his medical limitations. He was not discriminated against because of his age, nor was he subjected to any retaliation because of his complaint to the EEOC. The plaintiff left the

post office on December 1, 1993, but was not forced to retire. Under ordinary circumstances, he would have retired much sooner except for his desire of "receiving justice" against Mr. Loehner. If anything, the acts of his supervisors postponed his retirement. He did not make a case of constructive discharge.

THEREFORE, it is

ORDERED, that

1. The complaint is dismissed; and

2. The clerk is directed to enter judgment accordingly.